IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

H. PATRICK BARCLAY,                    )
                                       )
                Plaintiff,             )           9: 02-CV-717 (LES)
                                       )
           v.                          )
                                       )
STATE OF NEW YORK; THOMAS              )           MEMORANDUM AND ORDER
RICKS, Superintendent;                 )
RACETTE, Captain; ZODIAC,              )
Sergeant; DONALD SELSKY,               )
Director; T. HUTCHINS,                 )
Correction Counselor;                  )
A. LA CLAIR, Correction                )
Officer; DUBRAY, Lieutenant;           )
R. RICHARD, Correction                 )
Officer; CHO Drown, Hearing            )
Officer; MARLOW, Sergeant;             )
ASHLAW, Correction Officer;            )
GHOSTLAW, Correction Officer;          )
KISSANE, Correction Officer;           )
M. SMITH, Hearing Officer,             )
                                       )
                Defendants.            )
_____)


                    I. INTRODUCTION

          This matter is before the Court on defendants State of

New York, Thomas Ricks, Steven Racette, Theodore Zerniak, Donald

Selsky, Terry Hutchins, Amos LaClair, Keith Dubray, Roy Richards,

Curtis Drown, Patrick Marlow, Terry Ashlaw, Peter Ghostlaw, and

John Kissane's motion for summary judgment (Filing No. 80).  On

review of the motion, the briefs and evidentiary submissions of

the parties, and the applicable law, the Court finds that the

motion should be granted in part and denied in part.

II. BACKGROUND

H. Patrick Barclay is an inmate in the custody of the New York State Department of Correctional Services ("DOCS"). Viewing the facts in the light most favorable to him, as this Court must at the summary judgment stage, this lawsuit arises out of the following circumstances.

Since at least September of 1998, Barclay had been allowed the use of a cane to aid his movement.  On September 9 of that year, a medical chart reviewer assessed him as "malingering for secondary gain."  (*See* Filing No. 80, Ex. L.)  On October 9, 1998, another medical provider stated that Barclay "claims inability to walk w/o cane.  Medically nothing to support it." (*Id.*)  On October 30, 1999, Dr. Robert Takos removed Barclay from medical rest status and indicated that "[h]e does not need a cane."  (*Id.*)  On February 17, 2000, Dr. Takos reiterated his opinion that Barclay was malingering.  (*Id.*)

On October 31, 2000, Barclay was not permitted to attend his mother's funeral.  Defendant Thomas Ricks states that he denied permission for Barclay to attend because he "claimed he required a cane or wheelchair to attend and would not attend without the same, and there was no documented medical necessity for a cane or a wheelchair; and . . . because of Barclay's disciplinary history, including an assault on staff."  (Filing No. 80-5, at 2.)  Barclay complains that Ricks denied his request

-2-

to attend the funeral in retaliation against him "because of his protected rights as a disable [sic] person." (Compl. ¶ 45.B.46.) He also alleged that his correction counselor, defendant Terry Hutchins, failed to comprehensively assist him to ensure that he be permitted to attend the funeral. (*Id.* ¶ 5.A.90.)   Barclay never appealed the denial of permission to attend his mother's funeral, nor did he file a grievance until September, 2001.

On November 10, 2000, Barclay was scheduled to move to another cell.   Defendant Keith Dubray appeared at Barclay's cell and ordered him to walk with him to his new cell.   Barclay demurred, insisting his medical condition required that he use a cane when walking.   Dubray contacted the prison medical facility and was informed that Barclay had no medical condition that precluded him from walking unaided.   Dubray moved Barclay to his new cell via wheelchair and Barclay was issued a misbehavior report for disobeying Dubray's order to move.   (*See* Filing No. 80-4, Ex. C.)   A hearing was held on November 29, 2000, regarding the misbehavior report but Barclay did not attend because he was not allowed the assistance of a cane or wheelchair to come to the hearing.   The hearing proceeded in his absence and the hearing officer, defendant Smith, found Barclay guilty of the misbehavior report.   However, the hearing officer's determination was administratively reversed.   (*Id.* at Ex. D.)

-3-

On June 11, 2001, Barclay was scheduled to have a legal conference call in another matter.  Defendants Richards, Ashlaw and Ghostlaw arrived to escort Barclay to his conference call. In accord with DOCS policy, defendant Richards proceeded to conduct a pat search of Barclay.  Barclay declares that Richards ordered him to remove his "kufi," which the parties agree is a religious head garment, in order to search it.  Barclay complied. After the kufi was searched, Richards returned it to Barclay, who put it into his pocket.  Barclay was then handcuffed, given his cane, and escorted from his cell for a pat frisk, during which Richards took the kufi from Barclay's pocket and threw it onto his cell floor "like it was garbage."  Richards then frisked Barclay, and during the frisk he played with Barclay's hair and painfully squeezed his testicles.  Richards then pressed his stomach and penis onto Barclay's bottom and back in a sexual manner.  At this point Barclay turned away from the wall to ask for assistance from defendant Zerniak and to ask Richards to stop pressing on him.  Barclay was then ordered to release his cane, and defendants Richards, Ghostlaw and Ashlaw physically assaulted him causing, serious pain to his neck and back.  He was then placed back in his cell and was later examined by prison medical staff, to whom he complained of back, knee and testicle pain.  He was prescribed rest, cool compresses and Ibuprofen.  (*Id.* at Ex. F.)  Barclay was then issued a misbehavior report, citing failure

-4-

to obey a direct order, interference with a DOCS employee, failure to comply with frisk procedures, and violent behavior. (*Id.*)

The disciplinary hearing related to the June 11 misbehavior report was held on June 25, 2001.  Barclay again requested that he be allowed to use his cane to attend the hearing but his request was again denied.  Defendant hearing officer Curtis Drown held the hearing in Barclay's absence, finding that Barclay had forfeited his rights to attend.  (*Id.* at Ex. G.)  Upon review of a videotape of the June 11 incident (*Id.* at Ex. E), Drown found Barclay guilty of the charges in the misbehavior report.  (*Id.* at Ex. G.)

On February 5, 2002, defendant Richards refused to serve Barclay a lunch tray and defendant Zerniak failed to intervene to assure that Barclay was fed a lunch tray.  As a result of his not being fed a lunch tray, Barclay states that he was unable to take his pain medication and was therefore in pain. Barclay argues that Richards failed to serve him lunch in retaliation for the grievance and lawsuit he had filed related to the June 11, 2001, incident.

On July 18, 2002, Barclay filed his amended complaint in this action (Filing No. 6).  The complaint asserts claims under the First, Fifth, Eighth, and Fourteenth Amendments to the

Constitution, as well as for discrimination, conspiracy, and emotional distress.

### III. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, all reasonable factual inferences must be drawn in favor of the non-moving party. *See, e.g.*, *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003)(citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 255 (1986)).  However, to survive a motion for summary judgment, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). Thus, "statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999) (citations omitted).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Vann v. City of New York,* 72 F.3d 1040, 1048 (2d Cir. 1995)

(citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

A party "moving for summary judgment must prevail if the [non-movant] fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir. 1996)(citing *Anderson,* 477 U.S. at 247-48).

IV. DISCUSSION

Barclay brings this action pursuant to 42 U.S.C. § 1983.  In order to prevail on his claims, Barclay must present evidence sufficient to allow a reasonable jury to conclude that conduct by a person acting under color of state law proximately caused a deprivation of his federally protected rights.  *See* § 1983.  It is well settled that a state is not a person for the purposes of this statute.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").  The State of New York will therefore be dismissed from this lawsuit.  However, there is no question that when Barclay alleges conduct by prison staff, he is complaining of conduct by persons acting under color of state law.  A key issue in this case is whether that conduct deprived him of any federally protected rights.

A. Funeral

Barclay claims that his rights were violated when defendant Ricks denied him permission to attend his mother's funeral.  However, the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e, blocks this claim.  Section 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516 (2002).  The exhaustion requirement is not satisfied by the filing of an untimely or otherwise procedurally defective administrative grievance with the possible exception of a case in which a "prison[] might create procedural requirements for the purpose of tripping up all but the most skillful prisoners."  *Woodford v. Ngo*, 548 U.S. 81, 102-103 (2006).  Here, DOCS's grievance process requires inmates to "submit a complaint to the clerk within fourteen (14) calendar days of an alleged occurrence . . . ."  (Filing No. 80-4, at 33.)  There is no evidence that the fourteen-day requirement exists for the purpose of tripping up all but the most skillful prisoners.  Barclay

filed his grievance on September 5, 2001, almost one year after
he was notified of his mother's death on October 28, 2000.  (*See*
Filing No. 80-4, at 29.)  Therefore this claim does not satisfy
the PLRA's exhaustion requirement and must be dismissed.
Moreover, because this is Barclay's only claim against defendant
Terry Hutchins, he will be dismissed as a defendant.

B. Missed Lunch

    1. Eighth Amendment

        Barclay claims that defendants Richards and Zerniak
conspired to deprive him of his lunch tray on February 5, 2002.
Prison conditions claims are properly analyzed under the Eighth
Amendment.  The Amendment prohibits the infliction of "cruel and
unusual punishments" and is applicable to the states by
incorporation into the Due Process Clause of the Fourteenth
Amendment.  U.S. Const. amends. VIII, XIV; *See Robinson v.
California*, 370 U.S. 660, 666-67 (1962).  To prove a violation of
the Eighth Amendment, Barclay must satisfy both objective and
subjective inquiries.  *See Trammell v. Keane*, 338 F.3d 155, 161
(2d Cir. 2003).

        Barclay must make a showing sufficient to establish a
genuine issue of fact that "the deprivation alleged is
'objectively sufficiently serious' such that [he] was denied 'the
minimal civilized measure of life's necessities . . . .'"
*Trammell*, 338 F.3d at 161.  "The Eighth Amendment's prohibition

-9-

of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Viewing the facts in the light most favorable to Barclay, he was denied a single lunch which caused him to be unable to take a single dose of Ibuprofen.  This does not rise to the level of a constitutional violation.  The Court therefore finds that no reasonable jury could return a verdict for Barclay on this claim and therefore it should be dismissed.

      2. First Amendment

      Barclay also argues that Richards and Zerniak withheld his lunch tray in retaliation for his assertion of his right to petition the government for redress of grievances.  "In order to succeed on a retaliation claim, a plaintiff must establish that he engaged in protected conduct and that the 'protected conduct was a substantial or motivating factor in the prison officials' decision to discipline' him." *Barclay v. New York*, 477 F. Supp.2d 546, 558 (N.D.N.Y. 2007) (quoting *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir 2002)).  Barclay provides no direct evidence that Richards and Zerniak withheld his lunch because of his exercise of his rights.  However, direct evidence is not required for a plaintiff to show a causal connection.  "Types of

-10-

circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." *Id.* (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995). There is no circumstantial evidence here that could show a causal connection between Barclay's protected conduct and his missed lunch. The incident involving Barclay and Richards occurred on June 11, 2001, whereas the lunch incident occurred on February 5, 2002, nearly eight months later. This is too long a period of time between the protected conduct and the alleged retaliation to support a causal inference. Barclay does not have a good disciplinary record. *See Barclay*, 477 F.Supp.2d at 558-59. Nor was he found not guilty at the related disciplinary hearing.[1] Finally, the defendants made no statements that would tend to show a connection between the two events. Barclay is therefore unable to show a causal connection between protected conduct and adverse action and his retaliation claim for missing a lunch must be dismissed.

C. Kufi

Barclay claims his First Amendment rights were violated during the July 11, 2001 incident when defendants Richards,

---

[1] Barclay was found guilty at the disciplinary hearing, but that decision was later reversed in New York state court on procedural grounds.

Ashlaw, Ghostlaw, and Zerniak "did maliciously and prejudically [take] plaintiff's 'kufi' away and refuse[] to give it back to him in retaliation to his religious freedom that's protected." (Filing No. 6, at 21.)  As discussed above, in order to successfully assert a retaliation claim, Barclay must show that (1) he engaged in constitutionally protected speech or conduct, (2) that the defendants took adverse action against him, and (3) there was a causal connection between the protected activity and the adverse action.  *See Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001).  Barclay is again unable to demonstrate a causal connection.  The record in this case is devoid of any facts which suggest that the defendants took Barclay's kufi in retaliation for anything, including his religious faith.  Barclay's retaliation claim will therefore be dismissed to the extent it rests upon the kufi incident.

D. Discrimination and Retaliation Claims Based Upon Race

      1. Race Discrimination

      Barclay claims that "the white prisoners who are similarly situated were treated differently and never made to go through the discrimination that plaintiff was put through." (Filing No. 6, at 23.)  "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no

meaning." *Barclay*, 477 F.Supp.2d at 555 (citing *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)).  As in his previous suit, here Barclay "provides no facts as to the manner in which he was treated differently . . . .  Further, he provides no facts about how other similarly situated . . . white inmates were treated to demonstrate a disparity between their treatment and his." *Id.* Accordingly, this claim will be dismissed.

       2. Retaliation

       As noted above, in order to prove this claim, Barclay must show protected conduct, an adverse action and a causal connection between the two. *Dawes*, 239 F.3d at 492.  While Barclay arguably can show an adverse action, he provides no evidence of protected conduct based upon his race, nor is there any evidence of a nexus between the two.  Therefore this claim will also be dismissed.

E. Conspiracy

       Barclay claims that all the defendants in this suit conspired with one another to deprive him of his constitutionally protected rights in violation of 42 U.S.C. § 1985.

> In order to state a conspiracy
> claim under 42 U.S.C. § 1985(3), a
> plaintiff must show: (1) a
> conspiracy; (2) for the purpose of
> depriving, either directly or
> indirectly, any person or class of
> persons of the equal protection of
> the laws, or of equal privileges
> and immunities under the laws; (3)
> an act in furtherance of the

-13-

> conspiracy; (4) whereby a person is
> either injured in his person or
> property or deprived of any right
> or privilege of a citizen of the
> United States.

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir.
2007) (citing *Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir.
2006)).  Conclusory, vague, or general allegations of a
conspiracy to deprive a person of constitutional rights are
insufficient to withstand a motion to dismiss.  *Sommer v. Dixon*,
709 F.2d 173, 175 (2d Cir. 1983).  In this case, Barclay provides
no evidence of any agreement, nor any evidence of acts taken by
the defendants in furtherance of the alleged conspiracy.
Barclay's conspiracy claim cannot stand in the absence of
evidence and must be dismissed.

F. Emotional Distress

        Barclay asserts a claim for emotional distress and
mental anguish in violation of 42 U.S.C. § 1997.  The defendants
argue that this claim should be construed as an attempt to state
pendent claims that all the defendants have intentionally
inflicted emotional distress on Barclay in violation of New York
law (Filing No. 80-5, at 35).  The Court agrees that Barclay has
not presented sufficient evidence to avoid summary judgment
should this claim be so characterized.  However, these
allegations appear to the Court to be in the nature of a prayer
for relief, rather than an attempt to state a separate cause of

action under New York law.  (*See* Filing No. 6, at 26-27.)
Whether Barclay may claim emotional distress damages or not
therefore rests upon resolution of Barclay's remaining claims.
The motion should therefore be denied with respect to emotional
distress and mental anguish damages.

G. Remaining Issues

With respect to the remaining issues in this case, the
Court finds that material issues of fact, including whether or
not Barclay is disabled, preclude summary judgment.  The
defendants' motion for summary judgment will therefore be denied
with respect to these issues.

V. CONCLUSION

For the foregoing reasons, the defendants' motion for
summary judgment will be granted in part and denied in part.
Accordingly,

IT IS ORDERED:

1) The defendants' motion for summary judgment is
granted in part;

2) The State of New York and Terry Hutchins are
dismissed from this action;

3) Plaintiff's claims related to his mother's funeral
are dismissed;

4) Plaintiff's Eighth Amendment and First Amendment
claims arising out of the missed lunch incident are dismissed;

-15-

5) Plaintiff's First Amendment claim related to his kufi is dismissed;

6) Plaintiff's discrimination and retaliation claims based on race are dismissed;

7) Plaintiff's conspiracy claims are dismissed;

8) The defendants' motion is denied in all other respects.

DATED this 25th day of March, 2009.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court